UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

DEBORAH L. SPANN,                          )
                                           )
            Plaintiff,                     )
                                           )
v.                                         )   CIVIL ACTION NO.
                                           )   5:09-CV-064-BG
                                           )   ECF
MICHAEL J. ASTRUE,                         )
Commissioner of Social Security,           )
                                           )
            Defendant.                     )

## REPORT and RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Deborah L. Spann is appealing the decision to deny her

Social Security Disability benefits by Michael J. Astrue, Commissioner of Social Security.  Spann

argues that the Administrative Law Judge ("ALJ") improperly gave no weight to the opinion of her

treating physician.   Spann also argues that the ALJ's residual functional capacity ("RFC")

assessment of her mental capabilities was not supported by substantial evidence.  The court has

considered the administrative record, the arguments of the parties, and the applicable law and has

determined that the Commissioner's decision is supported by substantial evidence and should

therefore be affirmed.

## I.        Statement of the Case

In July 2006 Spann filed for disability insurance benefits under Title XVI of the Social

Security Act.  (Tr. at 80-84).  Spann was 44 years old at the time and had a high school education.

(*Id.* at 80, 118).  Spann asserted that her disability began on March 2, 1998.  (*Id.* at 80).  Spann's

prior employment had been as housekeeper and dishwasher.  (*Id.* at 41).  Spann complained that

major depression, arthritis, nervous leg syndrome, high blood pressure, and bursitis prevented her from working.  (*Id.* at 111).

The Disability Determination Service ("DDS") denied Spann's application initially and upon reconsideration.  (*Id.* at 43-44).  Spann requested a hearing before an ALJ.  (*Id.* at 59).  After the hearing the ALJ affirmed the DDS's denial of benefits.  (*Id.* at 10-24).  Spann requested review by the Appeals Council ("Council"), and the Council denied Spann's request for review.  (*Id.* at 1-3, 6).  Accordingly, this Court is reviewing the ALJ's decision and denial of benefits.

Because Spann raises only issues related to her mental impairments, the evidence related to her mental impairments alone will be discussed.

In April 2006 Harold C. Thurman, M.D., who is a psychiatrist, examined Spann at the West Texas Centers for Mental Health and Mental Retardation ("MHMR").  (Tr. at 447-49).  Thurman reported that Spann's thoughts were coherent, logical, and goal-directed.  (*Id.* at 448).  Spann could remember three out of three objects after two trials, but she could only remember one out of three objects after three to five minutes.  Spann did not have delusions or hallucinations.  Spann's speech was spontaneous and without deficits.  (*Id.*).  Thurman stated that Spann had a Global Assessment of Functioning[1] ("GAF") score of 43, but he did not explain how he determined the GAF score.  (*See id.* at 449).

---

[1] The GAF "is for reporting the clinician's judgment of the individual's overall level of functioning."  American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* at 32 (Michael B. First ed., 4th ed. rev. 2000) [hereinafter DSM-IV].  The GAF scale is divided into ten different ranges.  *Id.* at 32.  Each ten-point range has two components.  The first part covers the severity of symptoms, and the second part covers the functioning of the patient.  *Id.*  The GAF rating for a patient refers to either the severity of symptoms or the level of functioning, whichever is worse.  *Id.* at 32-33.  A person with a GAF rating of 41 to 50 has either serious symptoms (e.g. suicidal ideation, severe obsession rituals, or frequent shoplifting) or a serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  *Id.* at 34.

In June 2006 Dr. Thurman reported that Spann's mood appeared to be normal; her speech was spontaneous without pressure or deficits; her thoughts were coherent, logical, and goal oriented; her judgment and insight were intact; and she did not have suicidal or homicidal thoughts.  (*Id.* at 454).  Spann's GAF score was 45, but Dr. Thurman did not explain the basis for the score.  (*See id.*).

In August 2006 Mehdi Sharifian, M.D., indicated that Spann had mild limitations in her daily activities; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace.  (*Id.* at 472, 482).  Dr. Sharifian also completed a mental RFC assessment for Spann.  (*Id.* at 494-96).  Dr. Sharifian's conclusion was that Spann could "understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately w[ith] co-workers and supervisors, and respond appropriately to changes in routine work setting."  (*Id.* at 496).

In December 2006 Shiraj Vahora, M.D., examined Spann.  (*Id.* at 596-601).  Dr. Vahora reported that Spann's thought processes were logical, goal directed, and without loose associations.  (*Id.* at 600).  Spann appeared alert and oriented.  Spann had trouble counting backwards and when she was asked to spell "world" backwards, she spelled it "d-r-o-w."  Her memory functions and judgment appeared to be intact.  (*Id.*).  Dr. Vahora gave Spann a GAF score of 45 to 50, but he did not explain the basis for the score.  (*See id.* at 601).

In January 2007 Dr. Thurman reported that Spann was alert and oriented, her mood was distressed, she had no thought disorder, and her judgment and insight appeared intact.  (*Id.* at 751).  Dr. Thurman gave Spann a GAF score of 45, but he did not explain the basis for the score.  (*See id.*).

3

In his decision the ALJ stated that the GAF score was a "completely subjective" measurement of a person's ability to function.  (*Id.* at 19).  The ALJ found that Dr. Thurman's GAF scores for Spann were not supported by his treating notes or the record.  The ALJ explained that the degree of limitation that corresponded to a GAF score of 43 conflicted with the objective evidence in the record.  With regard to the GAF score, the ALJ stated that he gave no weight to Dr. Thurman's opinion.  (*Id.*).  As for  Dr. Vahora's opinion that the GAF score was 45 to 50, the ALJ asserted that the score was not conclusive that Spann was permanently disabled.  (*Id.* at 20).  The ALJ explained that a GAF score of 50 indicated that Spann qualified for psychiatric services and psychotropic drugs.  (*Id.*).  The ALJ stated that he evaluated the medical record as a whole and based on that evidence, the ALJ found that Spann was capable of performing simple, unskilled job duties. (*Id.* at 20, 22).  The ALJ further found that, even though Spann could not perform her past relevant work, she was capable of performing jobs that existed in significant numbers in the national economy.  (*Id.* at 23).  Accordingly, the ALJ concluded that Spann was not disabled.  (*Id.*).

## II.   Discussion

Spann argues that when the ALJ gave no weight to the opinion of her treating physician, the ALJ failed to assess Dr. Thurman's opinion under the criteria set forth in 20 C.F.R. § 404.1527(d). Spann further argues that if the ALJ perceived a disconnect between the GAF scores and the observed symptoms, the ALJ should have contacted her treating physician for clarification instead of disregarding the scores.  Spann contends that Dr. Sharifian's opinion cannot be used to support the ALJ's reasoning because the ALJ did not discuss or rely upon the opinion of Dr. Sharifian.

This court's "review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the

Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.  *Id.* (quotation omitted).   "In applying the substantial evidence standard, the court scrutinizes the record to determine whether such evidence is present, but may not reweigh the evidence or substitute its judgment for the Commissioner's."  *Id.*  "Conflicts of evidence are for the Commissioner, not the courts, to resolve."  *Id.*  "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

A claimant bears the burden of proving that she suffers from a disability.  *Perez*, 415 F.3d at 461.  The ALJ uses a five-step sequential analysis to evaluate claims of disability: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work.  *Perez*, 415 F.3d at 461.  The claimant bears the burden of proof on the first four steps.  *Id.*  At the fifth step, the Commissioner bears the initial burden of proof, but once the Commissioner shows that the claimant can perform jobs in the national economy, the burden shifts back to the claimant to rebut this finding.  *Id.*

Before going from step three to step four, the Commissioner determines the claimant's RFC. *Id.*  The RFC "is a determination of the most the claimant can still do despite h[er] physical and mental limitations and is based on all relevant evidence in the claimant's record."  *Id.* at 461-62. The RFC is used at steps four and five of the analysis.  *Id.* at 462.

When the evidence from a medical source is inadequate to determine whether the claimant is disabled, the Social Security Administration will first recontact the medical source.  20 C.F.R. § 416.912(e)(1).  The Social Security Administration "will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that *must* be resolved."  *Id.* (emphasis provided).

Here, the ALJ found that Spann was not disabled at step five of the sequential analysis.  In determining whether substantial evidence of disability exists, courts should weigh four factors: "(1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history."  *Perez*, 415 F.3d at 462.

"The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability."  *Newton*, 209 F.3d at 455.  "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence."  *Id.* (quotation omitted).  "The opinion of a specialist generally is accorded greater weight than that of a non-specialist."  *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir.1994).

"The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Newton*, 209 F.3d at 455 (quotation omitted).  "The treating physician's opinions are not conclusive" and "may be assigned little or no weight when good cause is shown."  *Id.* at 455-56.  "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically

acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

"SSA Regulations provide that the SSA 'will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion' and list factors an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to 'controlling weight.'" *Id.* (citing 20 C.F.R. § 404.1527(d)(2)) (alterations in original).   Specifically,   20 C.F.R. § 404.1527(d) requires consideration of:

> (1) the physician's length of treatment of the claimant,
> (2) the physician's frequency of examination,
> (3) the nature and extent of the treatment relationship,
> (4) the support of the physician's opinion afforded by the medical evidence of record,
> (5) the consistency of the opinion with the record as a whole; and
> (6) the specialization of the treating physician.

*Id.*

The Fifth Circuit explained that even if the treating physician's opinion is not entitled to controlling weight, it should not be completely rejected.  *Id.*  A medical source's statement about what an individual can still do is a medical opinion. SSR 96-5p, 61 F.R. 34471, 34474 (July 2, 1996).  "Adjudicators must weigh medical source statements under the rules set out in 20 C.F.R. 404.1527 . . . providing appropriate explanations for accepting or rejecting such opinions." *Id.* Thus, an ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the medical opinions of the claimant's treating specialist. *Newton*, 209 F.3d at 456.

When the ALJ decided to give no weight to the opinion of Dr. Thurman, the ALJ explained that the GAF score was not supported by Dr. Thurman's clinical notes. (Tr. at 19).  Specifically,

7

Dr. Thurman's notes stated that Spann's thoughts were coherent, logical, and goal-directed, she did not have delusions or hallucinations, and her speech was spontaneous and without deficits. (*Id.* at 448). The ALJ also noted that the GAF score was inconsistent with Dr. Vahora's notes, which stated that Spann's thought processes were logical and goal directed, she appeared alert and oriented, and her memory functions and judgment appeared to be intact. (*Id.* at 19, 600). Although the ALJ did not specifically list the factors he was applying when he addressed Dr. Thurman's opinion, the ALJ cited to 20 C.F.R. § 404.1527(d)(2), the reasons listed are part of the factors that the ALJ was required to consider, and the ALJ eventually listed the factors he was required to consider when evaluating medical opinions. *Newton*, 209 F.3d at 455; (Tr. at 19, 22). Thus, the ALJ applied the correct legal standard when deciding whether to give weight to Dr. Thurman's opinion. *Newton*, 209 F.3d at 455-56.

Dr. Thurman's opinion was that Spann's GAF score was 43, which indicated that she had either serious symptoms or a serious impairment in social and occupational functioning. DSM-IV at 34; (Tr. at 449). However, the notes of Dr. Thurman and Dr. Vahora were inconsistent with this diagnosis. Their notes did not list any serious symptoms or indicate that Spann had trouble functioning in a social or occupational setting. (*See* Tr. at 448-49, 454, 600-01). Accordingly, there was substantial evidence to support the ALJ's decision to give no weight to Dr. Thurman's opinion. *Newton*, 209 F.3d at 455-56.

Spann's argument that the ALJ should have recontacted Dr. Thurman instead of giving no weight to his opinion is without merit. The ALJ is only required to seek additional evidence or clarification when there is an ambiguity that must be resolved to determine whether the claimant is disabled. 20 C.F.R. § 416.912(e)(1). Any ambiguity between Dr. Thurman's GAF score and the

record did not need to be resolved to determine whether Spann was disabled because, as explained below, there was substantial evidence to support the ALJ's RFC assessment of Spann's mental capabilities.

Spann also argues that Dr. Sharifian's opinion should not be used to support the ALJ's RFC assessment. However, the ALJ stated that he had considered the medical record as a whole and Dr. Sharifian's opinion was part of the record. (Tr. at 22, 494-496). Thus, even though the ALJ did not specifically mention Dr. Sharifian's opinion, the ALJ was relying upon the entire record to support his findings. Accordingly, Dr. Sharifian's opinion can be used to support the ALJ's findings.

Dr. Sharifian's opinion was that Spann could "understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately w[ith] co-workers and supervisors, and respond appropriately to changes in routine work setting." (*Id.* at 496). Therefore, Dr. Sharifian's opinion is substantial evidence to support the ALJ's finding that Spann could perform simple unskilled job duties despite her depression.

### III.   <u>Recommendation</u>

The ALJ properly assessed whether to give weight to Dr. Thurman's opinion, substantial evidence supported the ALJ's decision to give no weight to Dr. Thurman's opinion, and substantial evidence supports the ALJ's RFC assessment. Accordingly, the Commissioner's decision that Spann was not disabled and not entitled to benefits should therefore be affirmed. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).

IV.     **Right to Object**

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within ten days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:          January 13, 2010.

NANCY M. KOENIG
United States Magistrate Judge